FOR PUBLICATION

Mes

**FILED**

OCT 13 2020

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                          )    Case No. 17-23606-B-7
                                )
JOAN ARLENE MILLER,             )    DC No. DNL-3
                                )
                                )
            Debtor(s).          )
_____ )


**OPINION REGARDING RETROACTIVE EMPLOYMENT AND COMPENSATION**

J. Russell Cunningham, Desmond, Nolan, Livaich & Cunningham,
Sacramento, California, for Chapter 7 Trustee.


JAIME, Bankruptcy Judge:

The matter before the court is a request by the chapter 7
trustee to retroactively employ attorneys as special counsel
under 11 U.S.C. § 327 pursuant to a *nunc pro tunc* order and an
exercise by the bankruptcy court of its equitable discretion to
compensate the professionals under 11 U.S.C. § 330 for pre-
employment services.  Although Roman Catholic Archdiocese of San
Juan, Puerto Rico v. Acevedo Feliciano, ___ U.S. ___, 140 S. Ct.
696, 206 L. Ed. 2d 1 (2020), prohibits the court from approving
the professionals' employment *nunc pro tunc*, or effective on the
date before employment is actually approved, it does not prohibit
the court from exercising its equitable discretion to compensate
the professionals for pre-employment services.  The court's
conclusion is consistent with long-standing Ninth Circuit
precedent which remains unchanged by Acevedo.

<u>Background</u>

The facts are relatively straightforward and are not disputed.

On March 3, 2013, debtor Joan Miller entered into a 40% contingency fee agreement with Mostyn Law, Arnold & Itkin, and Pulaski Law Firm, PLLC (collectively, "Special Counsel") to investigate, prepare, and prosecute any claim or suit for personal injuries arising out of the surgical placement of a medical device implant. Since that time Special Counsel has represented the debtor in litigation pending in the United States District Court for the Southern District of West Virginia.

More than four years later, on May 30, 2017, and at the age of 87, the debtor filed a voluntary chapter 7 petition. Neither the debtor's medical device claim nor her contingency fee agreement with Special Counsel were listed in the initial or in any amended schedules. According to the chapter 7 trustee, the debtor "forgot" about both when she filed her bankruptcy petition. Unsecured claims were scheduled at $31,999.00. A discharge was entered on September 11, 2017. The bankruptcy case was closed as a no-asset case on September 15, 2017.

In May 2019, the claims administrator in the debtor's medical device litigation communicated an offer to settle the debtor's claim for $165,000.00. Nobody disputes that the omission of the debtor's medical device claim from the bankruptcy schedules means it was not administered as an asset and it therefore remains property of the estate.

- 2 -

1    On the motion of the United States trustee, the chapter 7

2  case was ordered reopened on August 1, 2019, to administer the

3  asset.  The chapter 7 trustee was re-appointed on August 5, 2019.

4  And the chapter 7 trustee's motion to employ general bankruptcy

5  counsel was granted in an order filed on August 13, 2019.

6    The chapter 7 trustee identified Special Counsel and Special

7  Counsel's contingency fee agreement with the debtor in a

8  September 24, 2019, motion to approve a stipulation that allowed

9  the debtor a $30,000.00 exemption in the settlement proceeds of

10  the medical device claim without litigating the fact-intensive

11  basis for the claimed exemption under state law.  The court

12  approved the stipulation as a fair and equitable compromise by

13  order entered on October 30, 2019.

14    Timely proofs of claim filed by the December 9, 2019, bar

15  date totaled $32,270.66.  No tardy claims have been filed.

16    Although the debtor's bankruptcy case was reopened on August

17  1, 2019, and the chapter 7 trustee disclosed Special Counsel and

18  the contingency fee agreement shortly thereafter, the chapter 7

19  trustee did not file an application to employ and compensate

20  Special Counsel until July 14, 2020.  The application requests

21  the employment of and compensation for Special Counsel

22  "retroactively to March 3, 2013."  The application was filed with

23  a motion to approve the $165,000.00 settlement of the debtor's

24  medical device claim and the chapter 7 trustee's attorneys'

25  application for compensation.

26    The settlement terms and Special Counsel's role in settling

27  the debtor's medical device claim are not at issue.  If Special

28

- 3 -

1   Counsel is employed under the contingency fee agreement with the

2   debtor, it would receive $62,700.00 in attorney's fees, and

3   $1,151.54 in expenses, for a total of $63,851.54.  The debtor

4   would also be allowed a $30,000.00 exemption.  And after

5   mandatory litigation deductions, the estate would recover

6   approximately $54,001.06.  That amount is sufficient to pay

7   administrative expenses consisting of compensation for the

8   chapter 7 trustee and his attorneys of approximately $15,500.00,

9   pay 100% of unsecured claims in the approximate amount of

10  $32,270.66, and provide the debtor with a surplus.

11      The issues concern the chapter 7 trustee's request for a

12  *nunc pro tunc* order that approves Special Counsel's appointment

13  retroactive to a March 3, 2013, effective date and compensates

14  Special Counsel for services they provided from the retroactive

15  date forward.  In the absence of *nunc pro tunc* employment, the

16  court must also address the issue of Special Counsel's

17  compensation for its pre-employment services.

18                              Jurisdiction

19      Jurisdiction is founded on 28 U.S.C. § 1334(a).  Employment

20  of professional persons under 11 U.S.C. § 327(e) is a matter of

21  exclusive jurisdiction.  28 U.S.C. § 1334(e)(1).  Employment and

22  compensation of professionals is a core proceeding concerning the

23  administration of the estate that a bankruptcy judge may hear and

24  determine.  28 U.S.C. § 157(b)(2)(A).

25                               Analysis

26                                  I

27      As a general matter, authority for federal courts to make

28

                                - 4 -

1  retroactive orders derives either from inherent authority,
2  statute, or rule.

3                                A

4      The "*nunc pro tunc*" or "now for then" order is the paradigm
5  example of a retroactive order issued under the court's inherent
6  authority.  <u>Acevedo</u> effectively ends federal courts use of *nunc*
7  *pro tunc* orders to the extent such orders rewrite history to
8  retroactively make the record reflect something that never
9  occurred in the first instance.

10      <u>Acevedo</u> arose in a jurisdictional context.  <u>Acevedo</u>, 140 S.
11  Ct. at 699-700.  In March 2018, and thus after the Archdiocese
12  removed the case against it from the Puerto Rico Court of First
13  Instance to the United States District Court for the District of
14  Puerto Rico in February 2018 and before the district court
15  remanded by *nunc pro tunc* order in August 2018, the Court of
16  First Instance issued certain payment and seizure orders against
17  the Archdiocese.  <u>Id.</u>  Concluding that the payment and seizure
18  orders were void because the Court of First Instance lacked
19  jurisdiction to enter the orders after removal and before remand,
20  the Supreme Court explained:

21          The Court of First Instance issued its payment and
            seizure orders after the proceeding was removed to
22          federal district court, but before the federal court
            remanded the proceeding back to the Puerto Rico court.
23          At that time, the Court of First Instance had no
            jurisdiction over the proceeding.  The orders are
24          therefore void.

25  <u>Id.</u> at 700.

26      The Supreme Court also rejected the idea that the district
27  court's *nunc pro tunc* remand order, made effective to a few days
28

                                - 5 -

1  before the payment and seizure orders were entered, created the

2  non-federal jurisdiction necessary to validate the orders.  Id.

3  at 700.  Noting that the applicable remand statute prohibited the

4  local court from exercising jurisdiction "unless and until" there

5  was an actual remand, id. at 700, and further noting that nothing

6  occurred in the district court on the purported effective date of

7  the *nunc pro tunc* remand order, id. at 701, the Supreme Court

8  stated:

9         Federal courts may issue *nunc pro tunc* orders, or 'now
          for then' orders, to 'reflect the reality' of what has
10        already occurred[.] 'Such a decree presupposes a decree
          allowed, or ordered, but not entered, through
11        inadvertence of the court.'  Put colorfully, '*nunc pro
          tunc* orders are not some Orwellian vehicle for
12        revisionist history – creating 'facts' that never
          occurred in fact.'  Put plainly, 'the court cannot make
13        the record what it is not.'

14  Id. at 700-01 (emphasis in original, internal citations

15  omitted).[1]

16       Acevedo's significant limit on the use by federal courts of

17  *nunc pro tunc* orders has necessitated a change in bankruptcy

18  _____

19       [1]In this respect, Acevedo is consistent with what has been
    the Ninth Circuit position regarding *nunc pro tunc* orders for
20  effectively 50 years.  See Wirum v. Warren (In re Warren), 568
    F.3d 1113, 1116 n.1 (9th Cir. 2009) (inherent limited power to be
21  used only to correct the record to reflect actual events);
    Sherman v. Harbin (In re Harbin), 486 F.3d 510, 515 n.4 (9th Cir.
22  2007) (used to correct errors in the record, are extremely
    limited in scope, and refer to situations where the court, after
23  discovering the record does not accurately reflect its actions,
    corrects the record to accurately show what happened); United
24  States v. Sumner, 226 F.3d 1005, 1009-10 (9th Cir. 2000) (limited
    to making the record reflect what the trial court actually
25  intended to do at an earlier date, but which it did not
    sufficiently express or did not accomplish due to some error or
26  inadvertence); Martin v. Henley, 452 F.2d 295, 299 (9th Cir.
    1971) (Bankruptcy Act § 17 – *nunc pro tunc* power may be used only
27  where necessary to correct clear mistake and prevent injustice).

28

                              - 6 -

practice.  *Nunc pro tunc* orders have been common, particularly
with respect to employment under § 327.  Bankruptcy courts have
recognized that practice must now stop.  <u>In re Roberts</u>, 618 B.R.
213, 217 (Bankr. S.D. Ohio 2020); <u>In re Benitez</u>, 2020 WL 1272258,
*2 (Bankr. E.D.N.Y. March 13, 2020).

<u>Acevedo</u> is, however, not a *per se* prohibition of all
retroactive relief in all instances.  <u>Acevedo</u> curtails only the
inherent authority of federal courts to grant retroactive relief
by *nunc pro tunc* orders which purport to create facts or rewrite
history to support the retroactive relief granted.  There is a
distinct difference between retroactive relief granted by *nunc
pro tunc* orders which purport to create facts and rewrite
history, as with the remand order in <u>Acevedo</u>, and discretionary
grants of retroactive compensation in orders that do neither—as
explained below.

B

Statutes may also serve as a basis, express or implied, for
orders that have retroactive effect without need for inherent
power *nunc pro tunc* orders.

Express retroactive authority is exemplified by the power
within the bankruptcy court's discretion to "annul" the automatic
stay under 11 U.S.C. § 362(d).  <u>Merriman v. Fattorini (In re
Merriman)</u>, 616 B.R. 381, 391-93 (9th Cir BAP 2020).  Annulling
the automatic stay typically operates retroactively to validate
acts that violated the stay.

Implied retroactive authority reposes in Bankruptcy Code
provisions that require court approval but that do not mandate

- 7 -

1    that such approval actually precede the statutory activity.   Two

2    Ninth Circuit opinions illustrate this point.

3        In Harbin, the Ninth Circuit contrasted *nunc pro tunc* orders

4    with the equitable discretion that remains with bankruptcy courts

5    to grant retroactive approval under provisions of the Bankruptcy

6    Code which do not expressly require approval to precede the

7    approved act.   Harbin, 486 F.3d at 515 n.4, 521-22.   As an

8    example of this distinction in the context of the case before it,

9    the Ninth Circuit stated that "[s]ection 364(c)(2) does not, by

10   its express terms, require the bankruptcy court to authorize the

11   financing transaction before the debt is incurred." Id. at 522.

12   The salient point is that retroactive approval of the

13   postpetition debt did not depend on the fact of prior

14   authorization by the bankruptcy court to enter into the financing

15   transaction.   In other words, there was no need to create facts

16   or rewrite history with a *nunc pro tunc* order in order support

17   the retroactive relief granted.

18       The same distinction exists in the specific context of

19   employment under § 327 and compensation under § 330.  In Atkins

20   v. Wain, Samuel & Co., 69 F.3d 970 (9th Cir. 1995), the Ninth

21   Circuit reaffirmed the long-recognized principle that "[t]he

22   bankruptcy courts in this circuit possess the equitable power to

23   approve retroactively a professional's valuable but unauthorized

24   services." Id. at 973.[2]  Harbin described Atkins as an example

25

26       [2]See also Law Offices of Ivan W. Halperin v. Occidential
     Fin. Group, Inc. (In re Occidential Fin. Group), 40 F.3d 1059,
27   1062 (9th Cir. 1994) ("A bankruptcy court may sometimes exercise
     discretion to make an award for attorneys fees not authorized in
28

1 under § 327 of "circumstances that warrant an equitable exception

2 to the prior authorization requirement." <u>Harbin</u>, 486 F.3d at 522

3 (citing <u>Atkins</u>, 69 F.3d at 973).

4        <u>Harbin</u> amplifies <u>Atkins</u>' conclusion that although an order

5 authorizing employment under § 327 is a prerequisite to awarding

6 compensation under § 330, there is no requirement that

7 compensated services must have been performed only after the

8 effective date of an employment order.  These circumstances

9 distinguish <u>Acevedo</u> from circuit precedent, which means circuit

10 precedent that recognizes the power to award pre-employment

11 compensation remains unchanged by <u>Acevedo</u>.

12                                  C

13       Retroactive authority to compensate estate professionals

14 under § 330 for services provided before employment is formally

15 approved under § 327 also derives from federal rules of procedure

16 without need for inherent power *nunc pro tunc* orders.

17       The concept of retroactive compensation is incorporated into

18 the Federal Rules of Bankruptcy Procedure, as prescribed by the

19 Supreme Court.  Under Bankruptcy Rule 6003(a) an application for

20 employment may not be approved within the first 21 days of a

21 bankruptcy case, absent a need to avoid immediate and irreparable

22 harm.  Fed. R. Bankr. P. 6003(a).

23       The first 21 days of a chapter 11 case usually require

24 significant postpetition professional services that will be

25 _____

26 advance[.]"); <u>Jerrel v. Martinson (In re Jerrel)</u>, 24 F.3d 247,
   1994 WL 171166 at *4 (9th Cir. May 5, 1994) ("Jerrel is correct
27 that this circuit allows a bankruptcy court to award retroactive
   fees for services rendered without court approval.") (Table).
28

                                - 9 -

1  eligible for compensation under § 330 after employment is

2  approved.  This necessarily entails retroactive compensation for

3  pre-employment services to avoid the absurdity of the need to

4  find immediate and irreparable harm regarding employment in

5  virtually every chapter 11 case.  Bankruptcy Rule 6003(a) thus

6  contemplates employment orders that provide for an effective

7  retroactive date of compensation.  See Fed. R. Bankr. P. 6003,

8  Advisory Committee Note to 2011 Amendment.³  Nothing in Acevedo

9  suggests the Supreme Court intended to undermine the vitality of

10  Bankruptcy Rule 6003(a).

11                              II

12      The Ninth Circuit standard for an award of compensation

13  under § 330 for pre-employment services is found in Okamoto v.

14

15  ³The Judicial Conference Advisory Committee on Bankruptcy
Rules has clarified that a degree of retroactivity is implicit in
16  Bankruptcy Rule 6003:

17            The rule is amended to clarify that it limits the
          timing of the entry of certain orders, but does
18            not prevent the court from providing an effective
          date for such an order that may relate back to the
19            time of the filing of the application or motion,
          or to some other date.  For example, while the
20            rule prohibits, absent immediate and irreparable
          harm, the court from authorizing the employment of
21            counsel during the first 21 days of a case, it
          does not prevent the court from providing in an
22            order entered after expiration of the 21-day
          period that the relief requested in the motion or
23            application is effective as of a date earlier than
          the issuance of the order.  Nor does it prohibit
24            the filing of an application or motion for relief
          prior to expiration of the 21-day period.  Nothing
25            in the rule prevents a professional from
          representing the trustee or a debtor in possession
26            pending the approval of an application for the
          approval of the employment under Rule 2014.
27  Fed. R. Bankr. P. 6003, Advisory Committee Note to 2011
Amendment.

28                         - 10 -

1 THC Fin. Corp. (In re THC Fin. Corp.), 837 F.2d 389 (9th Cir.

2 1988), and Atkins, 69 F.3d at 973-74.  Notably, both are

3 retroactive compensation and not *nunc pro tunc* employment cases.

4     In THC, Bankruptcy Rule 215, § 327's predecessor, required

5 the court to approve a professional's employment in order for the

6 professional to be compensated by the estate.  THC, 837 F.2d at

7 391.  At the request of the bankruptcy trustee, an attorney

8 provided services to the estate over a four-year period without

9 prior court approval of her employment.  Id. at 390.  The

10 attorney then filed a fee application with the district court

11 which the bankruptcy trustee opposed because the attorney had not

12 sought prior approval of her employment.  Id.  Although the Ninth

13 Circuit noted that the attorney's employment should have been

14 approved before services were provided, it also concluded that

15 the absence of prior approval did not necessarily preclude

16 compensation, stating:  "In this circuit, a retroactive award of

17 fees for services rendered without court approval is not

18 necessarily barred."  Id. at 392.  The court further noted that a

19 court may exercise its discretion to compensate for valuable pre-

20 employment services and it set the standard for such an award as

21 follows:  "[S]uch awards should be limited to exceptional

22 circumstances where an applicant can show both a satisfactory

23 explanation for the failure to receive prior judicial approval

24 and that he or she has benefitted the bankrupt estate in some

25 significant manner."  Id.

26     Professionals who request retroactive compensation must also

27 satisfy the criteria for employment pursuant to § 327, other than

28

- 11 -

1  the usual requirement of pre-employment approval.  <u>Atkins</u>, 69

2  F.3d at 976.

3      Fee applicants bear the burden of proof in all such

4  instances, and the ultimate decision is within the discretion of

5  the court.  <u>See</u> <u>Neben & Starret v. Chartwell Fin. Corp. (In re</u>

6  <u>Park-Helena Corp.)</u>, 63 F.3d 877, 880-81 (9th Cir. 1995).

7      And of course, the length of the delay in seeking judicial

8  approval of employment affects the analysis of extraordinary

9  circumstances—the longer the delay, the more difficult to

10  explain.  Emergency services early in a case followed by prompt

11  application for employment are better explanations than neglect

12  and inattention.  <u>In re B.E.S. Concrete Products, Inc.</u>, 93 B.R.

13  228, 232 n.5 (Bankr. E.D. Cal. 1988).

14                              III

15      Turning now to the chapter 7 trustee's application to employ

16  Special Counsel in this case, the application references the <u>THC</u>

17  standard to some degree.  That reference permits the court to

18  address whether the standard for awarding pre-employment

19  compensation is satisfied in this case.

20      The court will grant the chapter 7 trustee's application to

21  employ Special Counsel under § 327(e).  However, the request for

22  *nunc pro tunc* approval of employment effective March 3, 2013,

23  will be denied.  Special Counsel's employment under § 327(e) will

24  be effective September 29, 2020, which is the application

25  approval date.

26      The court will also allow the chapter 7 trustee to

27  compensate Special Counsel under § 330 for the reasonable,

28

                         - 12 -

necessary, and beneficial services that Special Counsel provided
to the trustee and the estate prior to approval of their
employment.  However, compensation is subject to the conditions
explained below.

Special Counsel qualifies for employment under § 327(e) in
that it is well-qualified to serve the estate in the capacity of
the debtor's litigation counsel.

There also has been a plausible representation that the
debtor "forgot" about her medical device claim when she filed
bankruptcy.  The debtor is an octogenarian.  And communications
from counsel in mass tort cases are oftentimes sparse.  All of
this is consistent with good faith.

Special Counsel's services have provided a tremendous
benefit to creditors and the estate.  Settlement of the debtor's
medical device claim will result in full payment to all
creditors, permit the debtor to realize an exemption, and provide
the debtor with surplus funds.  A very rare outcome in a chapter
7 case.  Certainly under these circumstances no one can complain
about prejudice from the lack of prior approval of Special
Counsel's employment.  Moreover, under these circumstances, the
contingency fee compensation requested is reflective of a
reasonable value of the services that Special Counsel provided to
the estate prior to the approval of their employment.  And it is
permissible under § 328(a).

The chapter 7 trustee has also provided a satisfactory
explanation for the delay in seeking the approval of Special
Counsel's employment.  The debtor did not initially schedule her

1  medical device claim so delay is measured from the time the case
2  was reopened to administer the asset.  That delay is
3  approximately one year.  Although not ideal, neglect in seeking
4  Special Counsel's employment earlier is excusable.

5       The debtor's medical device claim was largely settled before
6  the case was reopened.  Special Counsel and the applicable
7  contingency fee arrangement were also disclosed very shortly
8  after the case was reopened.  And during the months that followed
9  the 2019 reopening and disclosure through mid-2020, the chapter 7
10 trustee worked with the litigation administrator to iron out
11 details of the settlement and payment of the settlement award.

12      Further, although not relied on by the chapter 7 trustee,
13 the court takes judicial notice that the COVID-19 pandemic struck
14 shortly after the debtor's bankruptcy case was reopened and it
15 continues to persist.  The pandemic has resulted in a shutdown of
16 most of the country with a significant number of individuals out
17 of the office and subject to stay-at-home orders.  As one court
18 described the situation:

19          Meanwhile, the world is in the midst of a global
            pandemic.  The President has declared a national
20          emergency.  The Governor has issued a state-wide health
            emergency.  As things stand, the government has forced
21          all restaurants and bars [] to shut their doors, and
            the schools are closed, too.  The government has
22          encouraged everyone to stay home, to keep infections to
            a minimum and help contain the fast-developing public
23          health emergency.

24 Art Ask Agency v. Individuals, Corporations, et al., 2020 WL
25 1427085 at *1 (N.D. Ill. March 18, 2020).  The story in
26 California is similar.  See In re Dudley, 617 B.R. 149 (Bankr.
27 E.D. Cal. 2020).

28

                              - 14 -

## Conclusion

For the foregoing reasons, the chapter 7 trustee's application will be granted in part and denied in part.

The relief requested in the application will be granted as to Special Counsel's employment which shall be effective September 29, 2020, and as to compensation to Special Counsel in the amount of the contingency fee requested. Compensation to Special Counsel is conditioned on the requirement that the chapter 7 trustee and Special Counsel execute a contingency fee agreement substantially in the form of the contingency fee agreement between the debtor and Special Counsel which shall be signed by all parties and filed with the court. To be clear, there shall be no payment to Special Counsel (and no distribution of any settlement funds) unless and until the new contingency fee agreement is signed and filed.

The request for *nunc pro tunc* approval of Special Counsel's employment retroactive to March 3, 2013, will be denied.

A separate order will issue.

Dated:  October 13, 2020.

UNITED STATES BANKRUPTCY JUDGE

- 15 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

J. Russell Cunningham
1830 15th St
Sacramento CA 95811

Jason M. Blumberg
501 I St #7-500
Sacramento CA 95814

Gabriel E. Liberman
1545 River Park Drive, Ste 530
Sacramento CA 95815